**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re Application of NATALIE MENASHE, et al. for an Order Permitting Discovery Pursuant to 28 U.S.C. § 1782 | |
| NATALIE MENASHE, et al., | Case No. 20-mc-00046-ZMF |
| *Petitioners*, | Magistrate Judge Zia M. Faruqui |
| v. | |
| COVINGTON & BURLING LLP | |
| *Respondent.* | |

<u>**MEMORANDUM OF LAW IN OPPOSITION TO THE APPLICATION OF
NATALIE MENASHE, ET AL. FOR AN ORDER PERMITTING
DISCOVERY PURSUANT TO 28 U.S.C. § 1782**</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 3

    A.    Nest ............................................................................................................ 3

    B.    Legal Proceedings and Representations.................................................... 5

    C.    Procedural History .................................................................................... 7

ARGUMENT ..................................................................................................................... 9

I.    The Application Must Be Denied Insofar As It Seeks Extraterritorial Documents
That Are Present in the United States Only As a Result of Nest's Requests for
Legal Advice from Covington. ........................................................................... 10

II.    Ordering Covington To Produce the Materials Requested by Applicants Would
Be an Abuse of Discretion. ................................................................................. 13

    A.    Applicants should obtain the discovery they seek from the parties to the
Israeli Action, not from Covington. ...................................................... 14

    B.    Applicants' proposed discovery requests are overbroad, unduly
burdensome, and seek in substantial part documents of no possible
relevance to the Israeli Action. ............................................................. 15

CONCLUSION................................................................................................................. 18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alexander v. FBI*,
    186 F.R.D. 71 (D.D.C. 1998) ...................................................................18

*Application of Sarrio, S.A.*, 119 F.3d 143 (2d Cir. 1997) .......................................11, 12

*Est. of Ungar v. Palestinian Auth.*,
    332 F. App'x 643 (2d Cir. 2009) .............................................................18

*Fisher v. United States*,
    425 U.S. 391 (1976) ................................................................................11, 12

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ...............................................................9, 14, 15, 16

*In re Application for an Ord. Pursuant to 28 U.S.C. § 1782 to Conduct Discovery
    for use in a Foreign Proceeding*, 286 F. Supp. 3d 1 (D.D.C. 2017) ........................17

*In re de Leon*,
    No. 19-MC-0197 (TSC), 2020 WL 1047742 (D.D.C. Mar. 4, 2020) ...............14, 16

*In re Jagodzinski*,
    No. 18-20606, 2019 WL 1112389 (S.D. Fla. Jan. 15, 2019) ....................................14

*Kiobel ex rel. Samkalden v. Cravath, Swaine & Moore LLP*,
    895 F.3d 238 (2d Cir. 2018) .........................................................................9, 12

*McCullough v. City of Montgomery*,
    No. 2:15-cv-463-RCL, 2019 WL 10960445 (M.D. Ala. Dec. 6, 2019) ..................16

*Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*,
    384 F. Supp. 2d 45 (D.D.C. 2005) .............................................................9, 11, 15

*Ratliff v. Davis Polk & Wardwell*,
    354 F.3d 165 (2d Cir. 2003) .........................................................................12

*United States v. White*,
    280 F. App'x 317 (4th Cir. 2008) ................................................................16

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) .........................................................................................11

**Statutes**

28 U.S.C. § 1782 ................................................................................................... *passim*

**Other Authorities**

S. Rep. No. 88–1580 (1964), *as reprinted in* 1964 U.S.C.C.A.N. 3782 ....................................11

Covington & Burling LLP ("Covington") respectfully submits this Memorandum of Law in Opposition to the Application of Natalie Menashe, et al. ("Applicants") for an Order Permitting Discovery pursuant to 28 U.S.C. § 1782 ("Application").

## INTRODUCTION

Applicants seek to have this Court order a law firm, Covington, to produce the files of its foreign client, Nest, for use in Israeli litigation that involves neither Covington nor Nest. The Application should be denied because the materials sought by the Application (1) were created and maintained outside the United States, and copies were transmitted to Covington in connection with Nest's request for legal advice, (2) belong to and should be sought from the defendants in the Israeli lawsuit, and/or (3) are of only minimal relevance to the Israeli lawsuit and yet would be highly burdensome to produce, especially in light of Covington's obligation to protect the privileges and confidences of its client.

Between 2005 and 2007, Nest invested in the Lebanese Canadian Bank ("LCB"). Several years later, Nest incurred a significant financial loss when U.S. government authorities revealed that LCB had been engaged in money laundering on behalf of terrorist groups, including Hezbollah. As a result of LCB's misconduct, Nest engaged Covington to bring claims in the United States against the managers of LCB who improperly used the bank to launder money, leading to its liquidation and Nest's financial loss.

Applicants have now commenced litigation in Israel against LCB, Hezbollah and others, alleging that those defendants were complicit in a July 2012 terror attack that injured Applicants. Rather than utilize the discovery mechanisms available in the Israeli proceedings to seek discovery from LCB and the other defendants, they have elected to seek discovery from attorneys for a non-party to those proceedings.

In particular, Applicants seek records obtained by Covington in the course of its representation of Nest and its principal, who are not U.S. citizens and whose records are held outside the United States.  Requiring a law firm to produce copies of documents that are in the United States only as a result of a request for legal advice would ignore the limits on the extraterritorial application of § 1782 and would chill the ability of foreign clients to consult U.S. attorneys for legal advice.

Moreover, Supreme Court guidance regarding Section 1782 cuts decisively against the Application.  The discretion-guiding factors identified by the Court include whether the materials sought could be obtained from a participant in the foreign proceeding.  Here, to the extent that Covington is in possession of any documents that could arguably be of more than minimal relevance to the Israeli action, those documents are in the possession of LCB, which is a party to the Israeli case.  Applicants tellingly fail to explain why they should not seek those materials from LCB, rather than Covington.

Finally, the Court also must consider whether the discovery sought is unduly intrusive or burdensome.  Here, the vast majority of the non-privileged, non-public materials sought by the Application—such as communications between Covington and U.S. government personnel relating to LCB—would be of no real utility in the Israeli action.  By contrast, the burden to Covington of sorting through its client files to ensure that it does not produce privileged or otherwise protected client materials would be enormous.  For this additional reason, Applicants' highly intrusive attempt to obtain discovery from non-U.S. persons and entities by issuing discovery requests to their U.S.-based lawyers should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.     Nest**

     *1.     Background*

Ghazi Abu Nahl ("Abu Nahl") is a Jordanian businessman living in the Republic of Cyprus.  Born in Barbara, Palestine, Abu Nahl built his business interests, primarily in the insurance and reinsurance industries, in the Middle East and North Africa region.  Abu Nahl is the majority owner of both Nest Investments (Holdings) Ltd ("Nest Holdings") and Nest Investments (Holdings) Lebanon SAL ("Nest Lebanon").  Nest Holdings is a corporate entity incorporated in Jersey, Channel Islands with its principal place of business in Limassol, Cyprus. Nest Lebanon is a corporate entity incorporated in Lebanon with its principal place of business in Beirut, Lebanon.  Neither Nest Holdings nor Nest Lebanon has operations in the United States or has done business in the United States.

     *2.     Investment in Lebanese Canadian Bank*

In 2002, the Algerian government granted Abu Nahl and Nest Lebanon, together with their affiliates and associates, a banking license, which they used to found Trust Bank Algeria ("TBA") in Algiers.  After the Algerian Central Bank required banks to increase their capital requirements, Nest searched for a strategic banking partner who could offer additional banking experience and expertise.

In 2005, Georges Zard Abou Jaoude ("Abou Jaoude") approached Abu Nahl to discuss his interest in LCB investing in TBA.  To help fund this investment, Abou Jaoude proposed to sell Nest a minority stake in LCB.  At the time, Abou Jaoude's proposal seemed attractive because it seemed that the banking expertise of Abou Jaoude and LCB would be beneficial to the operations of TBA.  Nest acquired a 24-percent stake in LCB through a series of transactions

between late 2005 and late 2007.  In exchange for its minority, non-controlling share of the

Bank, Nest paid LCB a total of more than $57 million.

On February 10, 2011, the U.S. Department of Treasury's Financial Crimes Enforcement

Network ("FinCEN") issued a finding ("Treasury Finding"), which identified LCB as a financial

institution of primary money laundering concern.  The Treasury Finding outlined the key

components of a money laundering network run by Abou Jaoude and others through LCB for the

benefit of Hezbollah, including the roles of various international drug traffickers and Hezbollah

operatives.  This money laundering scheme was hidden from Nest and the public until the date of

the Treasury Finding.[1]

In December 2011, the United States Attorney for the Southern District of New York

filed a Civil Forfeiture Complaint against LCB and other defendants.  The Civil Forfeiture

Complaint outlined in detail a scheme by which Hezbollah used a network of money launderers

and car dealers who used LCB to wire funds to purchase used cars that were shipped to Africa,

where they were sold.  The Civil Forfeiture Complaint detailed how affiliates of Hezbollah

originated approximately $62 million in wire transfers through LCB between 2006 and 2011 in

support of the scheme.  In June 2013, LCB agreed to settle the civil forfeiture action.  The

settlement included an agreement by LCB to pay a civil money laundering penalty of $230

million.  In connection with the settlement Société Générale de Banque Au Liban, SAL

("SGBL") agreed to acquire substantially all of the assets of LCB.  As a result of the civil

penalty and sale of LCB, Nest suffered economic injury, in addition to other adverse

---

[1] After the Treasury Finding, the U.S. Attorney for the Eastern District of Virginia obtained the Criminal Indictment of Ayman Saied Joumaa, who was charged with conspiracy to distribute narcotics and to launder money for his role in coordinating the shipment of tens of thousands of kilograms of cocaine and laundering hundreds of millions of dollars in proceeds generated from narcotics sales, for the benefit of Hezbollah.

consequences, including the denial of U.S. entry visas to Abu Nahl, his family members, and certain Nest employees.

**B.     Legal Proceedings and Representations**

1.      *U.S. Action*

After unsuccessful attempts to obtain redress in Lebanon, Nest retained Covington & Burling LLP to represent it in a potential lawsuit in the United States.  On December 14, 2015, Abu Nahl and Nest Lebanon filed a complaint in the U.S. District Court for the Southern District of New York seeking to hold Abou Jaoude and other managers of LCB responsible for their misuse of LCB (the "U.S. Action").  (Nest Holdings is not a party to the U.S. Action.)  Because of the secrecy that LCB's managers maintained over the illicit scheme, Nest Lebanon and Abu Nahl relied almost entirely on the findings of the U.S. government, including the Treasury Finding, the Civil Forfeiture Complaint, and the Joumaa Indictment to understand the nature of the money laundering scheme and the basis for their claims.

On November 6, 2017, after effectuating service on Abou Jaoude and certain other defendants, Nest Lebanon and Abu Nahl amended their complaint.  On December 11, 2017, the defendants filed a motion to dismiss, which the court granted on June 14, 2018.  On December 12, 2018, the court granted leave to amend the complaint but subsequently certified its order for interlocutory appeal and stayed the proceedings (including any discovery).  On June 30, 2020, the U.S. Court of Appeals for the Second Circuit reversed the district court's order granting leave to amend, and on August 21, 2020, the district court closed the case.

Throughout the proceedings, Nest Lebanon and Abu Nahl neither served any discovery requests nor received any discovery responses from defendants or any third parties.

2.      *DIFC Action*

In July 2016, Abu Nahl, Nest Lebanon and other Nest affiliates commenced a lawsuit in the Dubai International Financial Centre Courts ("DIFC").  The lawsuit alleges that an international affiliate of Deloitte & Touche, Deloitte & Touche (Middle East) ("DTME"), and one of its members, Joseph el Fadl, breached their duties as auditor of LCB between 2006 and 2009 by deliberately ignoring a reasonable suspicion of money laundering and terrorist financing, and that this ignorance caused Deloitte to fail to address issues relating to compliance with Lebanese reporting laws and losses caused by related party transactions.  *See* CFI-027-2016, *Nest Investments Holding Lebanon S.A.L. v. Deloitte & Touche (M.E.)* ("DIFC Action"). Covington has never represented Abu Nahl or any Nest entity in the DIFC Action.

3.      *Advocacy Before the U.S. Executive Branch*

The U.S. government's actions against LCB have impaired the ability of Abu Nahl and other Nest-affiliated individuals to obtain visas to travel to the United States.  For instance, Abu Nahl has been unable to attend meetings of the World Trade Centers Association ("WTCA"), a New York-based organization that promotes trade and investment in more than 90 countries around the world, despite having served as Chairman and Director of the organization.  Since the middle of 2013, when the WTCA Board of Directors held meetings in New York City and Las Vegas, Abu Nahl has not been able to attend in person.  Covington has worked on behalf of Abu Nahl and others to dispel any potential concerns regarding their knowledge of or complicity in the money laundering scheme and to facilitate those individuals' ability to travel to the United States, including through advocacy to relevant Executive Branch personnel.

### C.      Procedural History

#### 1.      *The Israeli Action*

Applicants are plaintiffs in a lawsuit filed in Jerusalem District Court on July 16, 2019 (the "Israeli Action").  Applicants have provided almost no information about the substance of the Israeli Action.  And the minimal information provided suggests only limited overlap between the subject matter of the Israeli Action and the U.S. Action filed by Covington on behalf of Nest Lebanon and Abu Nahl.

Applicants were victims of a July 2012 terrorist attack in Bulgaria.  Unlike Nest Lebanon and Abu Nahl, Applicants seek to recover for death, physical injuries, and emotional injuries they suffered based on alleged conduct dating back to 2002—more than five years before the Nest Group had any involvement with LCB.  *See* Pls.' Br. at 4.  Unlike the defendants in the U.S. Action, the Israeli Action names as defendants SGBL, DTME, el Fadl, and Hezbollah.  The only common defendant in both actions is LCB.

#### 2.      *Discovery Application*

On July 6, 2020, Applicants filed an application for an order permitting discovery of Covington pursuant to 28 U.S.C. § 1782.  In their application, Applicants rely on the same public-source evidence that Nest Lebanon and Abu Nahl relied on in their action against LCB. Specifically, Applicants rely on both the Treasury Finding and the Civil Forfeiture Complaint. *See* Pls.' Br. at 5.  These detailed descriptions of LCB's conduct formed the principal factual basis for the U.S. Action and are equally available to Applicants.

Applicants seek the Court's permission to serve a broad set of discovery requests on Covington, requesting "[a]ll documents and electronically stored information in the possession, custody, or control of Covington & Burling LLP, that concern or relate to [LCB, SGBL, DTME, el Fadl and Hezbollah] (including their officers and employees), that came into the possession,

7

custody, or control of Covington & Burling LLP, as the result of its retention by and/or representation of [Abu Nahl, Nest Holdings, or Nest Lebanon]."  Pls.' App., Ex. F.

The categories of potentially responsive documents that may be in Covington's possession, which effectively constitute the entirety of Covington's Nest Lebanon client file, are:

- public record materials (*e.g.*, the Treasury Finding and the Civil Forfeiture Complaint);

- LCB business records (including correspondence between LCB and Nest Group personnel);

- Internal Nest business records;

- Limited written communications between Covington and certain U.S. government persons relating to LCB and the visa issues described above in Section B.3; and

- Privileged and/or work product communications, analyses and drafts.[2]

While Applicants purport to carve out privileged materials and work product from their requests, such materials constitute a substantial portion of the documents in Covington's possession.  Accordingly, any attempt to identify and produce potentially responsive documents would necessarily entail a painstaking, document-by-document review in order to ensure that privileged materials are not produced.

Abu Nahl and Nest object to the production of materials responsive to the Applicants' request, including any materials provided by them to Covington in confidence for purposes of obtaining legal advice, and have instructed Covington to assert all privileges and other protections from disclosure available to them to the maximum extent permitted by law.

---

[2] In addition, Covington has in its possession a limited number of untranslated Arabic-language documents whose potential responsiveness to the Applicants' document request it could not determine without undertaking substantial effort and expense.

## ARGUMENT

Under 28 U.S.C. § 1782, "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."  In assessing their authority to grant an application under Section 1782, courts consider "(1) whether the person from whom discovery is sought resides or is found in the district where the action has been filed; (2) whether the discovery sought is for use in a proceeding before a foreign or international tribunal; and (3) whether the application is made by a foreign or international tribunal or 'any interested person.'"  *Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45, 49 (D.D.C. 2005).

A court, however, "is not required to grant a § 1782(a) discovery application simply because it has the authority to do so."  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).  Instead, the decision whether to grant an application is discretionary, and the Supreme Court has articulated several factors to guide courts in exercising that discretion.  *Id.* Those factors are (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," (2) the nature of the foreign tribunal, the character of the proceedings, and the "receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (3) whether the application conceals an attempt to "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the discovery sought is unduly intrusive or burdensome.  *Id.* at 264-65.  Beyond these enumerated factors, "[a] district court should also take into account any other pertinent issues arising from the facts of the particular dispute."  *Kiobel ex rel. Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018); *see also Intel*, 542 U.S. at 264-65 (declining to adopt "supervisory rules" regarding courts' exercise of discretion).

Here, the Application should be denied for three fundamental reasons.  First, to the extent that Covington possesses any non-public materials that might be of any real relevance to the Israeli Action, such materials were provided to Covington in connection with requests for legal advice.  Because these materials were not created within the United States and would not be found within the United States but for Covington's representation of its foreign clients, they are not discoverable pursuant to Section 1782.

Second, to the extent that any responsive materials in Covington's files might be of any real relevance to the Israeli Action, those documents consist of LCB business records.  LCB is a party to the Israeli Action, and the Application fails to explain why it would be appropriate to seek such materials from Covington (attorneys for a non-party) as opposed to from LCB itself.

Third, the Application seeks an overbroad set of materials, the vast majority of which are either in the public domain or of only marginal relevance to the Israeli Action—if that. Moreover, it would be extraordinarily burdensome and intrusive to compel this discovery from a law firm, whose files consist overwhelmingly of independently privileged and work product materials that would need to be painstakingly sorted and protected.  For this additional reason, the Applicants' burdensome and intrusive document request should be denied.[3]

## I.  The Application Must Be Denied Insofar As It Seeks Extraterritorial Documents That Are Present in the United States Only As a Result of Nest's Requests for Legal Advice from Covington.

Where documents are found in the United States only as a result of a foreign client's request for legal advice from lawyers based in the United States, those documents are treated as privileged and/or immune from disclosure under Section 1782.  This principle forecloses a

---

[3] Covington, Nest Lebanon, Nest Holdings and Abu Nahl reserve all rights to object to any subpoena that the Court authorizes Applicants to serve.

substantial portion of the discovery sought by Applicants, including *all* such materials that might conceivably be relevant to the Israeli Action.

The purpose of Section 1782 is to aid "in obtaining oral and documentary evidence *in the United States*."  S. Rep. No. 88–1580 (1964), *as reprinted in* 1964 U.S.C.C.A.N. 3782, 3788 (emphasis added).  Indeed, "construing the statute to reach evidence abroad would make United States courts 'clearing houses' for discovery in litigation around the world," which would impose enormous "demands on federal judicial resources" and "interference" (rather than assistance) with the operations of foreign tribunals.  *Application of Sarrio, S.A.*, 119 F.3d 143, 147 (2d Cir. 1997) (summarizing testimony of Section 1782's author).  Accordingly, "despite the statute's unrestrictive language, there is reason to think that Congress intended to reach only evidence located within the United States."  *Id.*; *accord Norex*, 384 F. Supp. 2d at 52 (discussing and agreeing with "body of caselaw suggest[ing] that § 1782 is not properly used to seek documents held outside the United States").

Moreover, where documents otherwise exempt from discovery may be found within the United States solely because they were transmitted to counsel for purposes of obtaining legal advice, they not discoverable.  *Fisher v. United States*, 425 U.S. 391 (1976), in which the Internal Revenue Service sought documents from a taxpayer's attorney, is instructive.  There, the Supreme Court recognized that if discovery could be obtained more easily from attorneys than from their clients, then clients would hesitate to show their documents to their attorneys and "it would be difficult to obtain fully informed legal advice."  *Id.* at 403; *see also Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (emphasizing the need for "full and frank communication between attorneys and their clients," which "promote[s] broader public interests in the observance of law and administration of justice").  Accordingly, the Supreme Court

indicated that "[w]hen the client himself would be privileged from production of the document . . . the attorney having possession of the document is not bound to produce." *Fisher*, 425 U.S. at 404.

This protection from disclosure applies with full force to requests for documents under Section 1782 where (1) copies of documents are located within the United States because they were provided to counsel in connection with a request for legal advice but (2) are not otherwise maintained within the United States. As the Second Circuit explained, the reasoning of *Fisher*

> would seem to apply also where the documents are not amenable to subpoena duces tecum because they lie outside the statutory limits of the court's power to compel production. *Fisher*'s rule arose from the policy of promoting open communications between lawyers and their clients. That policy would be jeopardized if documents unreachable in a foreign country became discoverable because the person holding the documents sent them to a lawyer in the United States for [purposes of obtaining legal] advice . . . .

*Application of Sarrio, S.A.*, 119 F.3d at 146[4]; *see also Kiobel*, 895 F.3d at 247-48 (noting adverse consequences that would occur if client documents were made discoverable merely by transferring them to U.S. counsel); *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 169 (2d Cir. 2003) ("Exposing documents—not otherwise subject to production—to discovery demands after delivery to one's attorney whose office was located within the sweep of a subpoena would produce a curious and unacceptable result.").

Based on the foregoing analysis, it is clear that much of the material sought by the Applicants—and the only material that might conceivably be of any real relevance to the Israeli

---

[4] Because the client in *Sarrio* waived its assertion of privilege during the pendency of the appeal, the Second Circuit ultimately remanded the case to the district court for further proceedings. No such waiver, however, has occurred here. To the contrary, Covington has been instructed by its clients to assert any privilege or other protection from disclosure available to it to the maximum extent permitted by law.

Action—is privileged and/or immune from disclosure under Section 1782.  Setting aside independently privileged or work product materials, publicly available documents, and limited written communications between Covington and U.S. government officials, the only potentially responsive materials in Covington's possession are business records of its clients and/or LCB that were provided to Covington for purposes of obtaining legal advice.[5]  Those business records were not created in the United States and would not be found within the United States had copies of them not been transmitted to Covington in connection with its representation of Nest. Accordingly, they are not properly subject to discovery under Section 1782.

## II.    Ordering Covington To Produce the Materials Requested by Applicants Would Be an Abuse of Discretion.

Authorizing the discovery sought from Covington would be an abuse of discretion for two reasons.

*First*, to the extent that the Application seeks materials that are remotely relevant to the Israeli Action, those materials are within the custody and control of the parties to the Israeli Action, including LCB.  Accordingly, Applicants should obtain those materials from the defendants in their Israeli lawsuit—not from legal counsel to a non-party.  Moreover, to the extent they would not be able to obtain such discovery from the parties to the Israeli Action, Applicants should not be permitted to use Section 1782 as an end-run around that discovery prohibition.

*Second*, the Application seeks an overbroad set of materials that overwhelmingly are either (i) without probative value in the Israeli litigation or (ii) available in the public domain.

---

[5] In a meet-and-confer, Applicants speculated that certain LCB or Nest Group business records may have been attached to communications between Covington and U.S. government officials. That is not the case.

These difficulties are compounded by the fact that the Application in effect seeks to discover the entirety of a law firm's client files—files that are comprised in substantial part of documents that are privileged or otherwise protected from discovery.  Applicants have made no showing that could possibly justify the burden and expense that would be required to comb through Covington's files and identify any non-privileged needles in a haystack comprised overwhelmingly of privileged and work-product documents.

### A.    Applicants should obtain the discovery they seek from the parties to the Israeli Action, not from Covington.

Under the discretionary factors set out by the Supreme Court in *Intel*, this Court should consider "whether the discovery sought is already available through the foreign tribunal's jurisdictional reach, and thus accessible without section 1782 relief."  *In re de Leon*, No. 19-mc-0197 (TSC), 2020 WL 1047742, at *2 (D.D.C. Mar. 4, 2020).  This is because, as the Supreme Court has made clear, a "foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."  *Intel*, 542 U.S. at 244.  This factor weighs overwhelmingly against Applicants' request for discovery here.

The only documents in Covington's possession that might be of some relevance to the Israeli Action are LCB business records, such as audit committee minutes and correspondence (including correspondence with the Nest Group).  Those materials can and should be obtained from LCB and/or its auditor, DTME, which are both parties to the Israeli Action—not from Covington, counsel for a non-party.  *See In re Jagodzinski*, No. 18-20606, 2019 WL 1112389, at *7 (S.D. Fla. Jan. 15, 2019) ("decision to first seek assistance from a United States federal court to obtain discovery—without first attempting to have the [foreign] tribunal overseeing his foreign proceeding rule on same—raises the specter of abusive litigation tactics").

The Application does not attempt to make any showing that Applicants could not obtain relevant business records from LCB (or any of the other defendants in the Israeli Action) through discovery in the Israeli courts.  During a meet-and-confer, however, Applicants suggested—for reasons they did not explain—that they would not be able to do so.  Even accepting that dubious assertion as true, it actually cuts against the Applicants' attempt to obtain such materials from Covington under Section 1782.

Under *Intel*, this Court must also consider whether the Application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of [Israel]."  542 U.S. at 265. Foreign litigants may not use Section 1782 to evade restrictions that the foreign court places on their ability to obtain discovery.  *Norex*, 384 F. Supp. 2d at 52 (Section 1782 may not be used to "interfere with the regular court processes in another country").  Accordingly, to the extent that the Applicants would not, in fact, be entitled to obtain LCB business records from LCB (or DTME) in the Israeli Action, they may not use Section 1782 as an end-run around that prohibition.

   **B.    Applicants' proposed discovery requests are overbroad, unduly burdensome, and seek in substantial part documents of no possible relevance to the Israeli Action.**

*Intel* requires this Court to assess whether the discovery sought is "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 264-65.  In light of the breadth of Applicants' document requests, the (at most) minimal relevance of the materials they seek, and the extraordinary burden Covington would face in producing materials responsive to the requests while properly safeguarding the attorney-client privilege, this factor strongly favors denial of the Application.

Under the broad language of Plaintiffs' proposed subpoena, there are several categories of potentially responsive documents, each presenting its own set of challenges and concerns.  In addition to the LCB business records discussed above, these categories are (1) public records

materials, (2) internal Nest documents, (3) communications between Covington and U.S. government personnel, and (4) independently privileged or protected work product documents.

Public records materials.  As described above, no discovery took place in the U.S. Action.  Accordingly, all of the information in Covington's possession relating to the money-laundering and terror-financing schemes set out in the complaints in the U.S. Action comes from public record materials, such as the Civil Forfeiture Complaint against LCB.  Because this material is already accessible to Applicants, there is no basis for them to obtain these materials from Covington.  *See United States v. White*, 280 F. App'x 317, 321 (4th Cir. 2008) (affirming order quashing subpoena for information that was publicly available, even if the subpoena would have saved the petitioner time and money in retrieving the desired information); *McCullough v. City of Montgomery*, No. 2:15-cv-463-RCL, 2019 WL 10960445, at *2 (M.D. Ala. Dec. 6, 2019) ("subpoenas should not be used to obtain information that is available to the public").

Internal Nest records.  Covington may have in its possession a limited number of confidential but non-privileged Nest business records that are technically responsive to the Applicants' overbroad document requests.  Such materials, however, could not possibly be material to the Israeli Action.  No Nest entity is a party to that action.  And any business records relating to Nest's investment in LCB and role as a minority shareholder in LCB are far afield from the issues in the Israeli Action, which focus on a 2012 Hezbollah terrorist attack in Bulgaria.

In assessing the fourth *Intel* factor, courts consider "the relevance of the requested discovery to the foreign proceeding."  *See In re de Leon*, 2020 WL 1047742, at *3.  For example, in one representative case, the Court declined to authorize discovery seeking client documents from a law firm in part because the request was "'unduly intrusive or burdensome' . . . when

16

balanced against the 'thin' and 'tenuous' relevance and 'limited usefulness'" of the requested materials to the foreign proceeding. *In re Application for an Ord. Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for use in a Foreign Proceeding*, 286 F. Supp. 3d 1, 4 (D.D.C. 2017). The same result is warranted here.

Executive Branch advocacy. As described above, Covington is in possession of a limited number of written communications between Covington and U.S. government personnel relating to LCB and the visa status of Abu Nahl and other Nest-affiliated individuals. While touching on issues relating to LCB, and therefore potentially responsive to Applicants' document requests, these communications—which do not attach or contain any underlying business records or other materials—could not possibly have more than extremely "limited usefulness" to Applicants' lawsuit in Israel, and so are not a proper subject of discovery pursuant to § 1782. *See id.*

Privileged/work product materials. Covington's potentially responsive files consist overwhelmingly of attorney-client privileged or otherwise protected work product, including correspondence with Nest, legal memoranda analyzing potential claims, and draft pleadings. While Applicants disclaim any intent to discover such materials, that alone does little to obviate the extraordinary risk and burden that a subpoena would impose on Covington and its clients.

Covington represented Nest Lebanon and Abu Nahl in the U.S. Action and in preparing to file that action. In connection with that representation, Covington prepared memoranda and draft pleadings in anticipation of filing the U.S. Action, and Covington communicated with regularity with Nest personnel. Most if not all of the analyses that Covington prepared in the period leading up to the filing of the U.S. Action and in the years during which it represented the plaintiffs in the U.S. Action is protected work product. Likewise, the years of communications between Covington and the Nest Group are likely to be overwhelmingly protected by the

attorney-client privilege.  These documents comprise the vast majority of the files that Covington would need to review in order to produce documents responsive to the subpoena.

Courts must balance a party's need for discovery against the potential hardship the requests would impose on others—and especially non-parties.  *See Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998).  Separating protected documents from those not subject to any privilege would require a painstaking document-by-document review of all the information that Covington has in its possession regarding its representation of Abu Nahl and Nest in the U.S. Action and its related advocacy activities.  As described above, moreover, that process would not result in the identification of documents for which Applicants have a significant need.  Applicants can obtain LCB business records from LCB in the Israeli Action.  And any other responsive documents are either publicly available or would be of little to no relevance to the Israeli Action.

Because of the unwarranted burden that such overbroad requests create, courts routinely quash subpoenas—like the one sought by Applicants here—that effectively seek to obtain a law firm's entire client file.  *See Est. of Ungar v. Palestinian Auth.*, 332 F. App'x 643, 645 (2d Cir. 2009) (affirming order quashing the subpoena "which asked for essentially every document [law firm] possessed relating to its representation of [a client] all over the world—because it was overly broad and burdensome").  For this reason, too, the Application should be denied.

<u>**CONCLUSION**</u>

Covington respectfully requests that the Court deny the Application for discovery pursuant to 28 U.S.C. § 1782.

Dated:  May 3, 2021

Respectfully submitted,

_/s/ Andrew E. Siegel_____

Stephen P. Anthony (D.C. Bar No. 426536)
Christian J. Pistilli (D.C. Bar No. 496157)
Andrew E. Siegel (D.C. Bar No. 1029365)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
santhony@cov.com
cpistilli@cov.com
asiegel@cov.com

*Attorneys for Respondent*