UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATALIE MENASHE, *et al.*,<br><br>　Petitioners,<br><br>　v.<br><br>COVINGTON & BURLING LLP<br><br>　Respondent. | No. 1:20-mc-46-ZMF |

## MEMORANDUM AND ORDER

### I.　INTRODUCTION

Petitioners, Natalie Menashe, *et al.*, seek an order from this Court, pursuant to 28 U.S.C. § 1782, compelling Respondent, Covington & Burling LLP ("Covington"), a law firm headquartered in Washington, D.C., to produce documents. *See* ECF No. 1, *Ex Parte* Application for an Order Permitting Discovery Pursuant to 28 U.S.C. § 1782 ("Appl.") at 3. Petitioners intend to use the discovery in an ongoing proceeding in the Jerusalem District Court in Israel, in which they seek compensatory and punitive damages against five defendants. *See id.* at 3–4. Respondent opposes this request. *See* ECF No. 10, Resp.'s Opp'n to the Application of Natalie Menashe, *et al.* for an Order Permitting Discovery Pursuant to 28 U.S.C. § 1782 ("Resp.'s Opp'n") at 5. For the reasons set forth below, Petitioners' Application is DENIED.

### II.　BACKGROUND

　　A.　Covington's Representation of Abu Nahl and Nest Affiliates

Ghazi Abu Nahl ("Abu Nahl") is a Jordanian businessman living in the Republic of Cyprus. *See* Resp.'s Opp'n at 3. He is the majority owner of Nest Investments (Holdings) Ltd ("Nest

Holdings") and Nest Investments (Holdings) Lebanon SAL ("Nest Lebanon") (collectively "Nest Affiliates"), neither of which is incorporated or conducts business in the United States. *See id.*

In late 2007, Nest Affiliates acquired a twenty-four percent minority share in the Lebanese Canadian Bank ("LCB") by paying LCB more than $57 million. *See id.* at 4. In 2011, U.S. government authorities alleged that LCB had engaged in money laundering on behalf of terrorist groups, including Hizballah. *See id.* On February 9, 2011, the U.S. Department of Treasury's Financial Crimes Enforcement Network ("FinCEN") issued a finding ("Treasury Finding") that LCB was a financial institution of primary money laundering concern. *See* Appl., Exh. A (Treasury Finding) at 9406. On September 7, 2011, following the Treasury Finding, LCB transferred certain assets and liabilities to Société Générale De Banque Au Liban, SAL ("SGBL") for the total consideration of approximately $580 million. *See* Appl., Exh. C (Stipulation and Order of Settlement Regarding LCB and SGBL) ("Stipulation and Order") at 3. In December 2011, the United States Attorney for the Southern District of New York filed a civil forfeiture complaint against LCB and other defendants related to this money laundering scheme. *See* Resp.'s Opp'n at 4. The complaint detailed LCB's money laundering activity since 2001. *See* Appl., Exh. B (Civ. Forfeiture Compl.) at 31. In 2013, LCB settled this action by paying out $102 million. *See* Stipulation and Order at 3. Nest Affiliates' investment in LCB caused significant economic injury and other adverse consequences to Nest Affiliates, including denial of U.S. entry visas for Abu Nahl, his family members, and certain employees. *See* Resp.'s Opp'n at 4–5.

On December 14, 2015, Abu Nahl and Nest Lebanon, by and through Covington, filed a civil action in the U.S. District Court for the Southern District of New York suing LCB managers for their money laundering activities (the "U.S. Action"[1]). *See id.* at 5. On December 11, 2017,

---

[1] *See Nahl v. Jaoude*, No. 15-cv-9755, 2018 WL 2994391 (S.D.N.Y. June 14, 2018).

2

the defendants filed a motion to dismiss, which the court granted on June 14, 2018. *See id.* On December 12, 2018, the court granted Abu Nahl and Nest Lebanon permission to amend their complaint but subsequently certified its order for interlocutory appeal and stayed the proceedings (including any discovery). *See id.* On June 30, 2020, the U.S. Court of Appeals for the Second Circuit reversed the district court's order granting leave to amend. *See id.* On August 21, 2020, the district court closed the case.[2] *See id.* Abu Nahl and Nest Lebanon neither served any discovery requests, nor received any discovery responses in relation to this matter. *See id.* Rather, Abu Nahl and Nest Lebanon relied on publicly available evidence, primarily from the Treasury Finding and civil forfeiture complaint, as the basis for their action. *See id.*

Since 2015, Covington has separately advocated on behalf of Nest Affiliates in front of the Executive Branch. *See id.* at 6. Covington's representation aims to dispel concerns regarding Nest Affiliates' previous ties to LCB and to facilitate obtaining U.S. entry visas for Abu Nahl, his family members, and Nest Affiliates' employees. *See id.*

In July 2016, Abu Nahl, Nest Lebanon, and other Nest Affiliate employees filed a civil action against Deloitte & Touche (Middle East) ("DTME") and its member Joseph el Fadl in the Dubai International Finance Centre Courts ("DIFC") for breach of duty as auditors of LCB between 2006 and 2009 (the "DIFC Action"[3]). *See* Appl., Exh. D (*Nest Investments Holding Lebanon S.A.L. v. Deloitte & Touche (M.E.)*) ("DIFC Action"). This case remains pending. *See* Appl. at 7. Covington does not represent any party in the DIFC Action. *See* Resp.'s Opp'n at 6.

---

[2] *See Nahl v. Jaoude*, 968 F.3d 173 (2d Cir. 2020).

[3] *See* CFI-027-2016, *Nest Investments Holding Lebanon S.A.L. v. Deloitte & Touche (M.E.)*.

B.        Israeli Action

On July 18, 2012, Hizballah terrorists bombed a bus transporting Israeli tourists at the Burgas, Bulgaria, international airport. *See* Appl. at 4. On July 16, 2019, the estates of the deceased victims, other injured civilians, and family members of both groups (*i.e.*, Petitioners herein) filed a lawsuit in the Jerusalem District Court in Israel ("the Israeli Action"). *See id.* at 4. Petitioners named five defendants: LCB, SGBL, DTME, Joseph el Fadl, and Hizballah. *See* Appl., Decl. of Yaki Rand, Esq. at 2. Petitioners assert causes of action under Israeli law for negligence, breach of statutory duty, aiding and abetting, and vicarious liability, and seek compensatory and punitive damages against all defendants. *See id.*

Petitioners allege that LCB is liable because "for nearly a decade prior to the Burgas attack it provided hundreds of millions of dollars in financial services to Hizballah." *Id.* They further allege that SGBL is liable as LCB's successor since 2011 after it purchased LCB's assets. *See id.* Neither Nest Affiliates nor Covington is a defendant or is otherwise implicated in the Israeli Action. *See* Resp.'s Opp'n at 5, 7.

C.        Discovery Application

On July 6, 2020, Petitioners filed an *ex parte* application for an order permitting discovery from Covington pursuant to 28 U.S.C. § 1782. *See id.* at 7. Petitioners' subpoena request demands "[a]ll documents and electronically stored information in the possession, custody, or control of [Covington], that concern or relate to [LCB, SGBL, DTME, el Fadl and Hizballah] (including their officers and employees), that came into the possession, custody, or control of [Covington], as the result of its retention by and/or representation of [Abu Nahl, Nest Holdings, or Nest Lebanon]." Appl., Exh. F (Proposed App. to the Subpoena).

4

On March 4, 2021, this Court denied Petitioners' application only to the extent that Petitioners requested to proceed *ex parte*. The Court ordered Petitioners to serve their request upon Covington, and for Covington to file any objections they might have.

On May 3, 2021, Respondent filed a motion in opposition to the discovery request. *See generally* Resp.'s Opp'n. On June 16, 2021, Petitioners filed their Reply. *See* ECF No. 12 (Pet'rs' Reply).

### III.   LEGAL STANDARD

The "twin aims" of § 1782(a) are "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004) (citation omitted). "Section 1782 contains three statutory requirements: '(1) the person from whom discovery is sought must reside in or be found within the district; (2) the discovery must be for use in a proceeding before a foreign or international tribunal; and (3) the application must be made by a foreign or international tribunal or any interested person.'" *In re Ord. of Hulley Enters. Ltd., et al. v. Baker Botts LLP ("In re Ord. of Hulley")*, No. 17-1466, 2017 WL 3708028, at *4 (D.D.C. Aug. 18, 2017) (quoting *In Matter of Application of Leret*, 51 F. Supp. 3d 66, 70 (D.D.C. 2014)). "To the extent that the order does not prescribe otherwise, . . . the document or other thing [shall be] produced, in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782(a). Nevertheless, "[a] person may not be compelled . . . to produce a document or other thing in violation of any legally applicable privilege." *Id.*

"Yet, 'a district court is not required to grant a § 1782(a) discovery application simply because it has authority to do so' under the statute. Rather, the district court should exercise its discretion, informed by consideration of four factors identified by the Supreme Court in *Intel*." *In*

*re Ord. of Hulley*, 2017 WL 3708028, at *3 (quoting *Intel*, 542 U.S. at 264). The four *Intel* factors are: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the requested discovery is "unduly intrusive or burdensome." *Intel Corp.*, 542 U.S. at 264–65. "The discretionary guidelines in *Intel* do not command that each factor be weighed equally, nor do they dictate whether any particular factor should take precedent." *In Matter of Application of Leret*, 51 F. Supp. 3d at 71. They merely "suggest guides for the exercise of district-court discretion." *Intel Corp.*, 542 U.S. at 263 n.15. "A court's discretion to grant or deny a § 1782 application is 'considerable,' and may appropriately take into account the 'specific facts of [the] application' to determine which factor or factors 'to weigh most heavily.'" *In re Ord. of Hulley*, 2017 WL 3708028, at *4 (quoting *Lazaridis v. Int'l Ctr. for Missing & Exploited Children*, 473 Fed. App'x. 2, 4 (D.C. Cir. 2012)).

**IV.   ANALYSIS**

    A.    <u>The Application Satisfies the Statutory Requirements for § 1782 Assistance</u>

The Application satisfies the three statutory requirements. *First*, "a corporation is 'found' in a district where it is headquartered." *In re Application of Masters*, 315 F. Supp. 3d 269, 274 (D.D.C. 2018). Because Covington is headquartered in Washington, D.C., it is "found" in this district. *See* Appl., Exh. G (Covington LinkedIn Profile).

*Second*, the discovery that Petitioners seek is for use in a proceeding in a foreign tribunal. *See* Appl. at 10. "Section 1782's 'for use' requirement is not an exacting one." *In re an Ord. of*

*Hulley*, 2017 WL 3708028, at *4.  "[T]he question under the statute is whether an applicant may make use of the discovery sought, not whether the foreign tribunal will ultimately find it useful." *In re Veiga*, 746 F. Supp. 2d 8, 19 (D.D.C. 2010) (internal quotations omitted).  Petitioners have made the requisite showing "by describing a relationship between [Nest Affiliates] and [LCB]." *In re Ord. of Hulley*, 2017 WL 3708028, at *4; *see* Appl. at 5–6.  They have also "show[n] that the discovery sought . . . has some reasonable bearing upon[] the [Israeli] proceedings." *In re Veiga*, 746 F. Supp. 2d at 21; *see* Appl. at 4–5.  They have thus satisfied "the burden imposed upon an applica[nt, which] is *de minimis*." *In re Veiga*, 746 F. Supp. 2d at 18.

*Third*, Petitioners are litigants before the Jerusalem District Court, a "foreign tribunal." *See* Appl. at 10.  There is no dispute that they are "interested persons."  *See id.*; *see also* Resp.'s Opp'n at 9–10.

### B. As a Matter of Discretion, the Application is Denied

"Assuming a district court has the authority to grant a discovery request under § 1782, the court then considers whether to exercise its discretion to do so." *Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45, 49 (D.D.C. 2005).  "The fourth [*Intel*] factor is the salient one here." *In re Ord. of Hulley*, 2017 WL 3708028, at *4.  It requires an evaluation "of the scope of the requested discovery, asking whether it is unduly intrusive or burdensome." *In re DiGiulian*, 314 F. Supp. 3d 1, 9 (D.D.C. 2018) (internal quotation omitted).  "In addition to the burden on the party from whom discovery is sought, courts have interpreted that consideration to contemplate the relevance of the requested discovery to the foreign proceeding." *In re Ord. of Hulley*, 2017 WL 3708028, at *4.

Here, "the relevance of the requested discovery to the [Israeli Action] is tenuous and sufficiently in question, and the burden on the respondent sufficiently onerous, to warrant denial

of the petitioners' request." *Id.* Petitioners' requested discovery "'carr[ies] the substantial potential of spawning litigation over collateral issues related to assertion of privilege, scope, and relevancy, that only . . . impos[e] additional . . . delays and costs on both parties and burdens on the courts to resolve work-product and privilege objections.' These concerns are simply too significant to warrant granting the Application." *Id.* at \*5 (quoting *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co. ("Sterne-Kessler")*, 276 F.R.D. 376, 382 (D.D.C. 2011)).

    1. *Relevancy*

Petitioners "fail[] to connect the dots between th[e] evidence and the [Israeli] proceeding." *In re Ord. of Hulley*, 2017 WL 3708028, at \*5. While Abu Nahl and Nest Lebanon engaged Covington in the U.S. Action to recover financial losses due to misuse of LCB by its managers, Petitioners seek to recover for "death, physical injuries, emotional injuries, and economic harm" they suffered in the Bulgarian terrorist attack, which does not implicate Nest Affiliates or Covington. Decl. of Yaki Rand, Esq. Covington's lobbying effort to dispel potential doubts of Nest Affiliates' relationship with LCB and to help Abu Nahl, his family members, and Nest Affiliates' employees obtain U.S. entry visas could not have more than "limited usefulness to the [Israeli Action], at best." *In re Ord. of Hulley*, 2017 WL 3708028, at \*5.

Petitioners also fail to support their claim that Covington is likely to possess "documents relating to the allegations made by Nest [Lebanon] and Abu Nahl against DTME and el Fadl in [that] Action." Appl. at 8. First, Covington's representation of Abu Nahl and Nest Lebanon in the U.S. Action concerned alleged misconduct of LCB managers, not DTME or el Fadl. *See* Resp.'s Opp'n at 5. Also, no discovery took place in this proceeding. *See id.* Abu Nahl and Nest Lebanon "relied almost entirely" on public information, including the Treasury Finding and the civil forfeiture complaint. *Id.* Second, Covington does not represent the plaintiffs in the DIFC

8

Action.  Covington "does not have possession, custody or control" over records in that foreign proceeding, regardless of the relevancy of the records therein.  *Norex*, 384 F. Supp. 2d at 56.  Furthermore, "[t]he burden of establishing control over the documents sought is on the party seeking production."  *Id.* (quoting 7 Moore's Federal Practice § 34.14(2)(b) (2004)).  Petitioners have produced no evidence to rebut Covington's statement that it "cannot produce what it does not have."  *Islamic Republic of Pakistan v. Arnold & Porter Kaye Scholer LLP*, No. 18-301, 2019 WL 1559433, at *8 (D.D.C. Apr. 10, 2019).

The time period in question creates further doubts of relevancy.  Petitioners' allegations against LCB in the Israeli Action concerns money laundering activities spanning 2002 to 2012.  *See* Decl. of Yaki Rand, Esq.  First, there could be no relevant records for the five-year period before late 2007, when Nest Affiliates became a minority shareholder in LCB.  *See* Resp.'s Opp'n at 3–4.  Second, Petitioners request records that are too old to be relevant.  The terrorist attack took place on July 18, 2012, yet there is no explanation why records as far back as late 2007 would be relevant.  At some point records become so far removed that they are no longer relevant.  Petitioners could have addressed this with a date range, but they did not.  Third, any records Covington possesses from the time period near the terrorist attack would only be of "limited usefulness to the Israeli Action, at best."  *In re Ord. of Hulley*, 2017 WL 3708028, at *5.  Covington may possess LCB business records from late 2007 to September 2011.  *See* Resp.'s Opp'n at 8.  Potentially relevant records end then, because LCB "ceased its banking activities, placed itself under liquidation, and . . . requested to strike its banking license off of the bank list" after the execution of the Sale and Purchase Agreement with SGBL in September 2011.  Stipulation and Order at 3; *see also* Resp.'s Opp'n at 14.  Thus, the terrorist attack postdates by more than ten months the date from when Nest Affiliates had contemporary LCB business records.  Petitioners

"fail[] to connect the dots between this evidence and the [Israeli Action], . . . which involves events culminating . . . [months after Nest Affiliates' minimal involvement with LCB between 2007 and 2011, and the event] giving rise to [P]etitioners' discovery request." *In re Ord. of Hulley*, 2017 WL 3708028, at *5.

2. *Burden*

"[T]he court must balance the need of the party seeking discovery against the burden upon the person from whom discovery is sought." *Alexander v. F.B.I.*, 186 F.R.D. 71, 75 (D.D.C. 1998). "In contrast to the thin relevance of the requested discovery, the burden it would impose on [Covington] is substantial." *In re Ord. of Hulley*, 2017 WL 3708028 at *5.

i. *Inefficiency of This Request*

First, in exercising its discretion, this Court considers "whether the discovery sought is already available through the foreign tribunal's jurisdictional reach, and thus accessible without section 1782 relief." *In re de Leon*, No. 19-mc-0197, 2020 WL 1047742, at *2 (D.D.C. Mar. 4, 2020). A "foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel*, 542 U.S. at 244. The Court makes this evaluation in part to consider whether the petition "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id.* at 264–65. Because efficiency is so important, attempting to "*more* efficiently [] obtain use of relevant documents from this Court does not evidence an intent to circumvent [foreign] discovery rules." *Infineon Techs. AG v. Green Power Techs. Ltd.*, 247 F.R.D. 1, 5 (D.D.C. 2005) (emphasis added).

"Courts have refused to engraft a quasi-exhaustion requirement onto section 1782 that would force litigants to seek information through the foreign or international tribunal before requesting discovery from the district court. Nonetheless, the district court may, in its discretion,

properly consider a party's failure first to attempt discovery measures in the foreign jurisdiction." *In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 107 (D.D.C. 2010) (cleaned up); *HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211, 225 (D.D.C. 2015) (same) (vacated on other grounds). "The Court is wary of granting discovery under § 1782 when it appears that the party seeking discovery may be using the United States statutes and federal court system to 'jump the gun' on discovery in the underlying foreign suit." *Norex*, 384 F. Supp. 2d at 54.

Here, Petitioners seek to "jump the gun" on discovery in the Israeli Action. The only documents in Covington's possession that might be of some relevance to the Israeli Action are LCB business records. *See* Resp.'s Opp'n at 5. "Although technically the respondent in the district court [is Covington], for all intents and purposes petitioners are seeking discovery from [either LCB or its auditor, DTME], their opponent in the [Israeli] litigation." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 85 (2d Cir. 2004). "*Intel* suggests that because [LCB and DTME are] participant[s] in the [Israeli] litigation subject to [Israeli] court jurisdiction, [P]etitioner[s'] need for § 1782 help 'is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.'" *Id.* (quoting *Intel*, 542 US at 244). Instead of taking the direct path to subpoena these records from either LCB or DTME in the Israeli Action, Petitioners chose the less efficient route to impose unwarranted discovery here that burdens Covington, a non-party to the Israeli Action. Efficiency is a different question than exhaustion. "[W]hen the real part[ies] from whom documents are sought (here, [LCB or DTME]) [are] involved in foreign proceedings, the first *Intel* factor counsels against granting a Section 1782 petition seeking documents from U.S. counsel." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018). The Court finds "in its discretion" that Petitioner's

"failure first to attempt discovery measures in the foreign jurisdiction" weighs against compelling production here. *In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d at 107.

      ii.  *Privilege Concerns*

Second, the burden that discovery would impose on Covington is hefty due to privilege and work product concerns. "Attorneys are under strict obligations to their client to preserve confidential information, protect their clients' interests, and prevent disclosure of privileged attorney-client communications or other information obtained during the representation that could harm the client." *Sterne-Kessler*, 276 F.R.D. at 384. "[T]he nature of the underlying litigation and the scope of the petitioners' discovery request leaves little to the imagination regarding the sensitive attorney-client information potentially at issue." *In re Ord. of Hulley*, 2017 WL 3708028, at *5. "Covington's potentially responsive files consist overwhelmingly of attorney-client privileged or otherwise protected work product [from its representation of Nest Affiliates in the past six years], including correspondence with Nest [Affiliates], legal memoranda analyzing potential claims, and draft pleadings."[4] Resp.'s Opp'n at 17. Moreover, given that Covington still represents Abu Nahl and Nest Affiliates in lobbying efforts in front of the Executive Branch, "[t]he risk that the proposed [discovery] would be used to uncover aspects of . . . counsel on a concurrently pending . . . matter is a significant concern." *Sterne-Kessler*, 276 F.R.D. at 384.

Furthermore, "invocation of the protections of the attorney-client privilege and work-product doctrine may be effective without requiring a detailed privilege log. Otherwise, any

---

[4] Petitioners argue that Covington's statements regarding burden "cannot be credited, because it is utterly unsupported by a declaration or affidavit." Pet'rs' Reply at 5–6. The attorneys who filed Covington's response are officers of the court who cannot lie to the Court as part of their duty of candor. It would be overly "formalistic" to only glean facts from a declaration or affidavit. *Gen. Elec. Co. v. Johnson*, No. 00-cv-2855, 2007 WL 433095, at *13 (D.D.C. Feb. 5, 2007). And "[i]t would be a pointless technicality" to require Covington now file a declaration stating the identical facts in its objection. *Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007).

objection to the scope of a discovery demand would be rendered moot because interposing that objection would trigger the very burdensome obligation to prepare a privilege log that the objection would be intended to avoid." *In re Application for an Ord. of Hulley Enters. Ltd., et al. v. Baker Botts LLP ("In re Appl. of Hulley")*, 286 F. Supp. 3d 1, 7 (D.D.C. 2017).  Petitioners' "open document requests . . . would impose an undue and disproportionate burden on [Covington] to prepare a privilege log of the . . . documents that [the firm] could . . . 'possess' after [six years] of . . . representation but most of which would be protected by the attorney-client privilege or attorney work-product doctrine." *Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3–4 (D.D.C. 2017).  Separating protected documents, including most if not all of the analyses and communications, from those not subject to privilege and work product would require a painstaking document-by-document review of all the information in Covington's client file on Nest Affiliates.

       iii.  *Overbreadth and Vagueness of This Request*

   Third, "[s]imply claiming that . . . [Covington] has 'non-privileged, factual information' without specifying precisely what information is sought or the benefit of that information is insufficient to overcome the potential risks that the Federal Rules [regarding privilege and work product] were intended to protect against." *Sterne-Kessler*, 276 F.R.D. at 386 (citing Fed. R. Civ. P. 26(b)(2)(C)(iii); Fed. R. Civ. P. 45(c)(3)(A)(iii–iv)).  Petitioners' request, which constitutes Covington's entire client file on Nest Affiliates, includes "public record materials (*e.g.*, the Treasury Finding and the civil forfeiture complaint); LCB business records (including correspondence between LCB and Nest Group personnel); [i]nternal Nest business records; [l]imited written communications between Covington and certain U.S. government persons relating to LCB and visa issues . . . ; and [p]rivileged and/or work product communications, analyses and drafts" with untranslated Arabic-language documents.  Resp.'s Opp'n at 8.  Such an

13

application, "which ask[s] for essentially every document [Covington] possesse[s] relating to its representation of [Nest Affiliates] all over the world" is "overly broad and burdensome." *Est. of Ungar v. Palestinian Auth.*, 332 F. App'x 643, 645 (2d Cir. 2009). "[T]he district court ha[s] no obligation to trim [Petitioners'] discovery request after it determine[s] it was overbroad and vague." *In re Application for an Ord. Pursuant to 28 U.S.C. § 1782*, 473 F. App'x 2, 4 (D.C. Cir. 2012).

Moreover, "[t]o require productions, courts have required that subpoenas cover relevant evidentiary documents that are not otherwise procurable by exercise of due diligence." *United States v. White*, 280 F. App'x 317, 321 (4th Cir. 2008) (citing *United States v. Nixon*, 418 U.S. 683, 699–700 (1974)) (cleaned up). No discovery took place in the U.S. Action. *See* Resp.'s Opp'n at 16. "Accordingly, all of the information in Covington's possession relating to the money-laundering and terror-financing schemes set out in the complaints in the U.S. Action comes from public record materials, [including] the [c]ivil [f]orfeiture [c]omplaint [and the Treasury Finding] against LCB." *Id.* Covington would have to "devote the same financial and man-hour expenditures to compile the information in the same fashion as [Petitioners] would have [] to do. Accordingly, [Petitioners fail] to establish . . . that the information [they seek is] not otherwise procurable by exercise of due diligence." *White*, 280 F. App'x at 321.

V. **CONCLUSION**

For the foregoing reasons, Petitioners' Application for an Order Permitting Discovery Pursuant to 28 U.S.C. § 1782 is DENIED.

Dated: August 3, 2021  _____

ZIA M. FARUQUI  
UNITED STATES MAGISTRATE JUDGE